# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLATFORM SCIENCE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FLEET CONNECT SOLUTIONS LLC,<br><br>    Defendant. | Case No.: 25-cv-457-DMS-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Pending before the Court is Defendant Fleet Connect Solutions LLC's Motion to Dismiss Plaintiff Platform Science, Inc.'s First Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. ("FAC", ECF No. 18). ("Def.'s Mot.", ECF No. 19). Plaintiff filed an Opposition, ("Opp'n", ECF No. 24), and Defendant filed a Reply, ("Reply", ECF No. 28). The matter came on for hearing on July 11, 2025. Christoper S. Marchese and Timothy J. Rawson appeared for Plaintiff, and C. Matthew Rozier and Jonathan L. Hardt appeared for Defendant. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's motion to dismiss for lack of subject matter jurisdiction and **DENIES** Defendant's motion for lack of personal jurisdiction and improper venue.

## I. BACKGROUND

Plaintiff Platform Science, a Delaware corporation headquartered in San Diego, California, is a leading manufacturer and provider of modern fleet telematics solutions to customers who operate long-haul, tractor trailer fleets that ship products across the country. (*Id.* ¶¶ 20, 40); (Opp'n, at 2). Defendant Fleet Connect, a limited liability company based in Texas, is the owner of numerous United States Patents related to fleet management ("patents-in-suit"), including: U.S. Patent Nos. 6,941,223 ("'223 patent"), 7,206,837 ("'837 patent"), 7,741,968 ("'968 patent"), 6,429,810 ("'810 patent"), 6,961,586 ("'586 patent"), 7,593,751 ("'751 patent"), 8,862,184 ("'184 patent"), 9,299,044 ("'044 patent"), 9,747,565 ("'565 patent"), 7,742,388 ("'388 patent"), 7,058,040 ("'040 patent"), 7,260,153 ("'153 patent"), 7,596,391 ("'391 patent"), and 7,656,845 ("'845 patent"). (FAC ¶¶ 1, 41).

Defendant neither practices the underlying inventions of the patents-in-suit nor competes in the fleet management industry but does actively enforce its intellectual property rights against alleged infringers. (Opp'n, at 2). Plaintiff alleges Defendant has pursued an aggressive enforcement campaign and sued five of its customers in six different lawsuits in California and Texas ("Customer Litigations") for infringement of the patents-in-suit for use of Plaintiff's products and services, including Connected Vehicle Device ("CVD"), ELD Tablets, PS DVIR, PS Workflow, PS HOS, PS Navigation, and PS Messages ("Accused Products"). (FAC ¶ 44); (Opp'n, at 3). Plaintiff alleges it has contractual indemnity obligations to customers who use its products and is presently defending two of those customers in the Customer Litigations—Schneider National Carrier, Inc. ("Schneider") in the Central District of California and Werner Enterprises, Inc. ("Werner") in Northern District of Texas. To address Defendant's flurry of lawsuits, Plaintiff filed this action for declaratory judgment of noninfringement of the patents-in-suit.

Defendant initiated the Customer Litigations on February 15, 2024, by suing C.R. England, Inc. ("C.R. England"), a Platform Science customer, in the Central District of California for its alleged infringement of the '810, '388, '040, '153, '391, and '845 patents

based on C.R. England's use of products not designed, manufactured, or supplied by Plaintiff. (FAC ¶¶ 3, 4–5); Compl. ¶¶ 1, 17, *Fleet Connect Solutions LLC v. C.R. England, Inc.*, 24-cv-00376 (C.D. Cal. Feb. 15, 2024) [hereinafter *C.R. England* case], Dkt. No. 1. Later, Defendant sought to add claims of infringement of other patents, including the '837, '968, '044, and '565 patents, based on C.R. England's "use of the Platform Science Products." (FAC ¶¶ 4–5); Plt's Mot. to Am. Compl. at ii., 6, *C.R. England* case (C.D. Cal. Sep. 30, 2024), Dkt. No. 73. Defendant's motion to amend to add these claims was denied. (FAC ¶ 4); (Def's Mot., at 5).

Defendant next filed a complaint in the Central District of California on December 4, 2024, against Schneider for infringement of the '223, '837, '968, '586, '751, '184, and '388 patents based on Schneider's "making, using, [and] selling" of products, which included all of Plaintiff's Accused Products at issue in the subject declaratory judgment action. (FAC ¶¶ 3, 8–9); FAC ¶¶ 1, 16, 57, 74, 82, 97, 112, 127, 148, *Fleet Connect Solutions LLC v. Schneider National Carriers Inc.*, 24-cv-10435 (C.D. Cal. Feb. 24, 2025) [hereinafter *Schneider* case], Dkt. No. 26.

As noted, Plaintiff is actively defending Schneider based on its alleged contractual obligation to defend and indemnify Schneider against Defendant's infringement claims. (FAC ¶ 19). After the original complaint was filed in *Schneider*, Defendant's counsel contacted Schneider's San Diego-based counsel, Fish & Richardson P.C. ("Fish"), via email about whether Schneider would be open to entering a non-disclosure agreement ("NDA") with Defendant to facilitate settlement discussion. (FAC ¶ 29); (Opp'n, at 9). During a meet and confer on January 8, 2025, Fish informed Defendant that Fish also represented Plaintiff, and thereafter Defendant's counsel sent an email to Fish with revised NDA terms that included Plaintiff as a party. (*Id.* ¶¶ 29–30). The parties agreed to an NDA and discussed settlement, but ultimately were unable to agree on licensing terms. (*Id.* ¶¶ 31–36).

Less than two weeks later, Defendant filed another lawsuit, this time in the Northern District of Texas on January 29, 2025, against Werner for infringement of the '810, '388,

'040, '153, '391, and '845 patents based on Werner's "making, using, [and] selling" of the products, which included Platform Science's CVD and ELD Tablets. (FAC ¶¶ 3, 10–11); FAC ¶¶ 1, 18, 51, 61, 71, 81, 91, 101, *Fleet Connect Solutions LLC v. Werner Enterprises Inc.*, 25-cv-00233 (N.D. Tex. Apr. 28, 2025) [hereinafter *Werner* case], Dkt. No. 23. Plaintiff is actively defending Werner in that case based on its alleged contractual obligations. (FAC ¶ 19).

On February 17, 2025, Defendant sued again, this time naming PACCAR, Inc. ("PACCAR"), a Platform Science partner, in the Eastern District of Texas for infringement not of the patents-in-suit but other Fleet Connect owned patents based on PACCAR's "making, using, [and] selling" of products, which included all Accused Products in this declaratory judgment action except for the PS DVIR. (FAC ¶¶ 3, 13); (Opp'n, at 5); Compl. ¶¶ 1, 19, 27, 37, 47, 57, 67, 76, *Fleet Connect Solutions LLC v. PACCAR Inc.*, 25-cv-00209 (E.D. Tex. Feb. 17, 2025) [hereinafter *PACCAR I* case], Dkt. No. 1. Defendant voluntarily dismissed *PACCAR I* when it discovered PACCAR did not engage in any of the allegedly infringing activities. (FAC ¶ 17).

On February 27, 2025, Plaintiff filed the present action against Defendant, seeking declaratory judgment that none of its Accused Products or use of those products by its customers infringes any of the patents-in-suit. (Compl., ECF No. 1, at 26–27)). After Plaintiff filed this action, Defendant sued Mesilla Valley Transportation ("MVT"), a Platform Science customer, on June 5, 2025, and PACCAR again on June 24, 2025, in the Western and Eastern Districts of Texas, respectively, for infringement of, among others, the '388, '040, '153, and '845 patents based on PACCAR's and MVT's "making, using [and], selling" of products, which include products provided by Platform Science. (Opp'n, at 5–6); Compl. ¶¶ 1, 15–19, 27, 36, 54, 63, *Fleet Connect Solutions LLC v. MVT Services, LLC d/b/a Mesilla Valley Transportation*, 25-cv-00264 (W.D. Tex. June 5, 2025) [hereinafter *MVT* case], Dkt. No. 1; Compl. ¶¶ 1, 18–22, 30, 39, 57, 66, *Fleet Connect Solutions LLC v. PACCAR Inc. d/b/a Peterbilt Motor Co.*, 25-cv-00658 (E.D. Tex. June 24, 2025) [hereinafter *PACCAR II* case], Dkt. No. 1.

Except for *PACCAR I*, all Customer Litigations are ongoing, with the *Schneider* case having been stayed pending resolution of the present action. (Opp'n, at 7, 9); Order Granting Def's Mot. to Stay at 2, *Schneider* case, (C.D. Cal. June 10, 2025), Dkt. No. 60. Defendant, in its opposition to Schneider's motion to stay, stated that Plaintiff could potentially be liable for *indirect* infringement of the patents asserted against Schneider. *See* Plt's Opp'n to Def's Mot. to Stay at 8, 14, 19, 20, *Schneider* case (C.D. Cal. May 1, 2025), Dkt. No. 46. District Judge Hernan Vera, in his order granting Schneider's motion to stay, identified Platform Science as the "true defendant" and stated Defendant's "allegations against Schneider are based *solely* on its use of Platform Science's products." Order Granting Def's Motion to Stay at 2, 5, *Schneider* case, (C.D. Cal. June 10, 2025), Dkt. No. 60 (emphasis in original).

Based on these events, Plaintiff argues there is a substantial controversy of sufficient immediacy and reality between the parties to warrant declaratory judgment jurisdiction. Plaintiff seeks to litigate noninfringement of the patents-in-suit in its home district, the Southern District of California. Defendant disputes subject matter jurisdiction exists for some of the patents-in-suit and argues that for other patents for which subject matter jurisdiction exits and a case is already underway, *i.e.*, *Schneider* in the Central District of California, Plaintiff must pursue its noninfringement claims in that case and not here in a separately filed declaratory judgment action.

## II. LEGAL STANDARD

Defendant brings this motion to dismiss the FAC in its entirety under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3) for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, respectively. The governing standard for each is set out below.

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss on the grounds that the Court "lack[s] subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing that an Article III case or controversy existed

at the time the claims were filed. *Arris Grp., Inc., v. Brit Telecomms PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a court has subject matter jurisdiction over a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S 118, 127 (2007) (internal quotations omitted). Subject matter jurisdiction generally does not arise when a declaratory plaintiff merely "perceives . . . a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). However, "a patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory plaintiff" may give rise to subject matter jurisdiction. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906 (Fed. Cir. 2014) (citation omitted) (holding direct infringement claims against a supplier's customer by patentee for use of supplier's products may give rise to indirect infringement liability against supplier and warrant declaratory judgment jurisdiction over supplier's noninfringement claims). Declaratory judgment jurisdiction must be evaluated on both a "claim-by-claim basis" and a "product-by-product basis." *See Streck, Inc. v. Research Diagnostic Sys.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012) (quoting *Jervis B. Webb Co. v. So. Sys., Inc.*, 742 F.3d 1388, 1399 (Fed. Cir. 1984); *see also DataTern*, 755 F.3d at 911 (citing *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1373–74 (Fed. Cir. 2004)) ("Declaratory judgment jurisdiction must be determined on a product-by-product basis.").

**B. Federal Rule of Civil Procedure 12(b)(2)**

Under Federal Rule of Civil Procedure 12(b)(2), a party may file a motion to dismiss on the grounds that the Court "lack[s] personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In all patent cases, the law of the Federal Circuit applies to determine whether the district court may exercise personal jurisdiction over a defendant. *Nuance Commc'ns, Inc. v.*

*Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010). To survive a motion to dismiss in the absence of discovery, the plaintiff must present factual allegations that, when viewed as true, create a *prima facie* case showing personal jurisdiction in the forum state. *Id.* at 1231.

Even where general personal jurisdiction is not available, specific personal jurisdiction may be exercised by a district court in California if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011); *see also* Cal. Civ. P. Code §410.10. Such minimum contacts are met under the Federal Circuit's three-prong test where the plaintiff successfully demonstrates that "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). The relevant activities in a declaratory judgment action are those "which relate in some material way to the enforcement or the defense of the patent[s]" at issue that were purposefully directed at residents of the forum. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019–20 (Fed. Cir. 2009); s*ee Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) ("Because declaratory judgment actions raise non-infringement, invalidity, and/or unenforceability issues central to enforcement of the patents in question, we have looked beyond the 'arises out of' inquiry and have found jurisdiction where such 'other activities' in some identifiable way 'relate to' enforcement of those patents in the forum." (quoting *Breckenridge*, 444 F.3d at 1363–67)).

### C. Federal Rule of Civil Procedure 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss on the grounds that the Court is an "improper venue." Fed. R. Civ. P. 12(b)(3). Venue for "patent infringement" suits is governed by the patent infringement venue statute, 28 U.S.C.

§ 1400(b). However, "a declaratory judgment action alleging that a patent is . . . not infringed—the mirror image of a suit for patent infringement—is governed by the general venue statutes, not by § 1400(b)." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990), *abrogated on other grounds by TC Heartland LLC v. Kraft Foods Group Brand LLC*, 581 U.S. 258 (2017). The controlling general venue statute provides in relevant part that a civil action "may be brought in … a judicial district in which any defendant resides." 28 U.S.C. § 1391(b). Entity defendants are "deemed to reside … in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Subject matter jurisdiction exists for declaratory judgment—satisfying Article III's "case or controversy" requirements—when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S at 127 (internal quotations omitted). Defendant argues "there is no actual or imminent injury caused by [Defendant] that is of sufficient immediacy and reality to warrant declaratory relief." (Mot., at 1.) Defendant contends Plaintiff has not shown that there are or have been "any threats of an infringement suit" against Plaintiff, "demands for royalty payments or licensing agreement, or any actual economic injury as a result of the litigations brought by [Defendant] against [Plaintiff's] customers based on the ***customers'*** infringement of the [Accused] Patents." (*Id.*) (emphasis in original).

In *Arris,* the Federal Circuit held that a supplier has standing to commence a declaratory judgment action "where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment[] . . . if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its

customers." 639 F.3d at 1375. Plaintiff initially argues it is has standing to bring this declaratory judgment action for 12 of the 14 patents-in-suit because it is contractually obligated to defend and indemnify Schneider and Werner against Defendant's claims of infringement of those patents. (FAC ¶ 19) (Opp'n, at 14) ("Standing alone, Platform Science's contractually obligated, customer-tendered defense and indemnity establishes declaratory judgment jurisdiction.")). "Indemnification obligations aside," Plaintiff also argues "all of the circumstances" show "tangible and immediate 'adverse legal interests'" sufficient to "warrant standing to bring this declaratory judgment action as to all patents in the [FAC]." (*Id.*) These arguments are addressed in turn.

    1. <u>Platform Science's Indemnity Obligations</u>

Defendant does not challenge that a supplier's indemnity obligation to a customer may be sufficient to warrant subject matter jurisdiction, but instead argues—as to Schneider—that "this Court's exercise of subject matter jurisdiction would be improper since the [subject] action was initiated ***after*** the Schneider Litigation." (Reply, at 3) (emphasis in original). "In that scenario," Defendant argues, Plaintiff's "only option is to intervene in the underlying case(s), not to bring a second, later-filed declaratory judgment suit [in another District]." (*Id.*) This argument concedes subject matter jurisdiction as to the seven patents at issue in *Schneider* and instead focuses on venue.[1]

Defendant relies on *DataTern*, which states a supplier "cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues [is] *already* underway . . . [and where the supplier] could defend its customers and efficiently and effectively participate in *the Texas action*." 755 F.3d at 904 (emphasis in original). Courts have interpreted *DataTern* to limit the supplier's ability to seek a declaration of noninfringement to the case already underway, not to file a separate declaratory judgment action elsewhere. *See Bambuser AB v. Sito*

---

[1] The '223, '586, '837, '751, '968, '388, and '184 patents are at issue in the *Schneider* case.

*Mobile R&D IP, LLC*, No. 23-21757, 2024 U.S. Dist LEXIS 157554, at *10 (D.N.J. Sept. 3, 2024) ("[E]ven an obligation to indemnify 'would not justify' what Bambuser seeks here: a case has already been filed against Bambuser's customer in the Western District of Texas. In agreeing to indemnify their customer, Bambuser could defend SFA and effectively participate in the SFA Action." (internal citation omitted)); *Early Warning Servs., LLC v. Grecia*, No. 21-1050, 2021 U.S. Dist. LEXIS 147548, at *21 (E.D. Pa. Aug. 6, 2021) ("As Early Warning has an obligation to indemnify Frost Bank against Mr. Grecia's claims, a case or controversy lies between Early Warning and Frost Bank. But [*DataTern*] instructs us Early Warning should litigate this controversy in connection with the first action."). Accordingly, Defendant argues—while acknowledging declaratory judgment jurisdiction over the seven patents at issue in *Schneider*—that Plaintiff's sole option to litigating noninfringement of those patents is limited to the Central District of California where the *Schneider* case is pending.[2]

Defendant also argues Plaintiff has *no* obligation to indemnify Werner, therefore there is no subject matter jurisdiction over the patents at issue in that case.[3] Defendant contends that Werner's "modifications" of Plaintiff's products and "use" of such products "in combination with other" non-Plaintiff products is the basis for Defendant's infringement claims against Werner. (Reply, at 5.) "Thus, under the plain terms of Platform Science's [indemnity] agreement, the enumerated exceptions apply and Platform Science is not obligated to indemnify Werner for any claims of patent infringement." (*Id.* at 3-4). However, as Plaintiff points out, Defendant's claim charts in the *Werner* case accuse Werner of infringement by "using" Plaintiffs products. (Ex. 18, ECF No. 18-18, at 1); (Ex. 23, ECF No. 18-23, at 1); (Ex. 24, ECF No. 18-24, at 1); (Ex. 25, ECF No. 18-25, at 1); (Ex. 26, ECF No. 18-26, at 2); (Ex. 27, ECF No. 18-27, at 1). Plaintiff has sufficiently

---

[2] Notably, Defendant's argument that Plaintiff must litigate noninfringement of the patents at issue in the *Schneider* case *concedes* personal jurisdiction over Defendant in California. This issue is discussed, *infra*, at Section III.B.

[3] The '810, '388, '040, '153, '391 and '845 patents are at issue in the *Werner* case.

demonstrated that it has indemnity obligations to Werner based on Werner's use of Plaintiff's allegedly infringing products, and therefore subject matter jurisdiction exists over the patents at issue in *Werner*.

As noted, the *Werner* case is pending in the Northern District of Texas and is "already underway," so Defendant would argue that if subject matter exists over the patents at issue in that case, Plaintiff's sole option is to litigate noninfringement of those patents there and not to bring a separate declaratory judgment action in the Southern District of California. The Court disagrees and finds for the reasons set forth in Section III.C, *infra*, that venue is proper here.

Based upon Plaintiff's indemnity obligations in the *Schneider* and *Werner* cases, Plaintiff has shown that subject matter jurisdiction exists over 12 of the 14 patents-in-suit: the '223, '586, '837, '751, '968, '388, and '184 patents asserted against Schneider, and the '810, '388, '040, '153, '391 and '845 patents asserted against Werner.[4] Regarding the two remaining patents-in-suit, the '565 and '044 patents asserted against C.R. England, Plaintiff has not alleged indemnity obligations. Rather, Plaintiff argues other circumstances warrant declaratory judgment jurisdiction over those two patents, and that those circumstances also provide additional grounds for exercise of declaratory judgment jurisdiction over all the patents-in-suit.

2. Other Circumstances

In addition to its indemnification obligations, Plaintiff argues:

> [Defendant] has (1) engaged in an aggressive and systematic campaign to harass [Plaintiff's] customers based on mere use of "Accused Products" manufactured by [Plaintiff], (2) the Central District of California [in the *Schneider* case] found that [Plaintiff] is the "true defendant," (3) [Defendant's] claim charts indicate that it believes [Plaintiff] is at the very least an indirect infringer and extensively rely on Platform Science documents as opposed to documents from other providers or even the customers to show that alleged infringement, and (4) [Defendant] proposed and drafted an NDA

---

[4] The '388 patent is at issue in both *Werner* and *Schneider*, so in total 12 of 14 of the patents-in-suit are involved in those cases.

> to engage in settlement negotiations with [Plaintiff] in an attempt to resolve the infringement allegations against the Platform Science products used by its customers.

(Opp'n, at 14–15). Regarding the first circumstance—litigation against Plaintiff's customers based on "mere use" of the Accused Products—it is well established that a supplier's standing to bring a declaratory judgment action does not automatically exist solely because the supplier's customers have been accused of infringing a patent based on their use of the supplier's product. *See DataTern*, 755 F.3d at 904 ("To the extent that Appellees argue that they have a right to bring the declaratory judgment action solely because their customers have been sued for direct infringement, they are incorrect."). That Defendant has engaged in an "aggressive and systematic campaign to harass" Plaintiff's customers adds color to Plaintiff's characterization of the parties' dispute, but that allegation is disputed by Defendant and the Court declines to make that finding based on the present record. And the district court's determination in the *Schneider* case that Defendant (and not customer Schneider) is the "true defendant" is noted and likely played a role in that court's determination to stay the action and invite this Court to resolve the larger dispute encompassing the patents-in-suit and Plaintiff's other customers, including Schneider, but it does not otherwise advance Plaintiff's argument. These two circumstances, therefore, do not warrant subject matter jurisdiction over any of the patents-in-suit.

With respect to the third circumstance—indirect infringement—the Court agrees a controversy exists between the parties regarding induced infringement liability sufficient to confer declaratory judgment jurisdiction over some of the patents-in-suit and some of Plaintiff's products but not all of them.[5] Plaintiff relies on *DataTern* in support of its argument that there is substantial controversy with Defendant regarding Plaintiff's liability

---

[5] The Court does not address indirect infringement based on contributory infringement liability because Plaintiff does not advance that argument.

for indirect infringement based on an induced infringement theory. *DataTern* held that a controversy regarding induced infringement under 35 U.S.C. § 271(b) may give rise to declaratory judgment jurisdiction if supported by factual "allegations by the patentee or other record evidence that establish[es] at least a reasonable potential that" the patentee could plausibly bring a claim that "the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." 755 F.3d at 904–05.

Specifically, *DataTern* held that there is a reasonable potential the patentee could plausibly bring a claim of induced infringement when (1) the claim charts provide that the customer allegedly directly infringed the patent based on use of the supplier's product, and (2) the claim charts show the supplier provided documentation to the customer that instruct for using the product in an infringing manner. *See id.* at 905. Applying this rule, *DataTern* reasoned that when the claim charts allege the customer's direct infringement based on its use of the supplier's products and documentation, there is an implied assertion of induced infringement when the supplier encouraged acts accused of direct infringement. *See id.* Finally, *DataTern* held that "[d]eclaratory judgment jurisdiction must be determined on a product-by-product basis" and refused to find such jurisdiction as to a supplier's products generally when the use of certain products had not been accused to infringe the patent. *Id.* at 911 ("The claim charts from the customer suits impliedly asserted indirect infringement based on the use of [SAP's] BusinessObjects [software], not any other SAP product. While SAP's complaint and DataTern's counterclaims invoked SAP products generally, … only BusinessObjects was fairly at issue, and the district court's judgment could not have extended beyond BusinessObjects.").

Here, Defendant accused Schneider of direct infringement of Claim 19 of the '223 Patent, Claim 1 of the '837 Patent, Claim 4 of the '968 Patent, Claim 9 of the '586 Patent, Claim 6 of the '751 Patent, Claim 1 of the '184 Patent, and Claim 1 of the '388 Patent based on Schneider's use of each of the Accused Products. (Exs. 15, 16, 17, 19, 20, 21, 22, ECF Nos. 18-15, 18-16, 18-17, 18-19, 18-20, 18-21, 18-22). Instructions extracted

from Plaintiff's website are referenced in each claim element in the claim charts relating to each patent except for the '388 Patent. *Id.* Thus, declaratory judgment jurisdiction exists over the '223, '837, '968, '586, '751, and '184 patents because potential liability over Plaintiff's alleged induced infringement of these patents is apparent given the alleged acts of direct infringement by Schneider and implied allegation of encouragement to infringe by Plaintiff. With respect to alleged infringement of the '388 Patent, the claim chart cites only to Plaintiff's documentation in the claim's preamble, not the claim's elements. (Ex. 22, ECF No. 18-22). Therefore, declaratory judgment jurisdiction over the '388 Patent is absent as the knowledge element of Plaintiff's alleged induced infringement is unsatisfied.

Because *DataTern* requires declaratory judgment jurisdiction to "be determined on a product-by-product basis," each Accused Product also must be separately addressed. 755 F.3d at 911. Defendant has accused Schneider of infringing one or more of the patents-in-suit by using "one or more Platform Science fleet management and tracking solutions including, but not limited to, the PS Navigation, PS DVIR, PS Fleet, PS Analytics, PS Telematics, PS Workflow, PS HOS, PS Messages, Fleet Management Software, ELD devices including a connected vehicle device and in-cab Tablets" and "the Connected Vehicle Device (CVD)," a list that includes all of Plaintiff's Accused Products. (Ex. 15, ECF No. 18-15, at 1); (Ex. 22, ECF No. 18-22, at 1). The "but not limited to" language used by Defendant is found in every claim chart, meaning Defendant could reasonably allege infringement of *any* asserted patent through use of *any* of Plaintiff's "fleet management and tracking solutions" listed in Defendant's complaint, which contains all of Plaintiff's Accused Products. (Exs. 15, 16, 17, 19, 20, 21, 22, ECF Nos. 18-15, 18-16, 18-17, 18-19, 18-20, 18-21, 18-22); First Amended Complaint ¶ 16, *Schneider* case (C.D. Cal. Feb. 24, 2025), Dkt. No. 26. Accordingly, because there is potential induced infringement liability against Plaintiff, declaratory judgment jurisdiction exists as to Plaintiff's claims of noninfringement of the '223, '586, '837, '751, '968, and '184 patents relating to *all* Accused Products under this theory of declaratory judgment jurisdiction.

      Werner has also been accused of directly infringing some of the patents-in-suit, namely Claim 1 of the '810, '388, '040, '153, '391, and '845 patents through its use of Plaintiff's products. (Exs. 18, 23, 24, 25, 26, 27, ECF Nos. 18-18, 18-23, 18-24, 18-25, 18-26, 18-27); FAC ¶¶ 1, 18, 51, 61, 71, 81, 91, 101, *Werner* case (N.D. Tex. Feb 28, 2025), Dkt. No. 23. As noted, Defendant argues that Werner's infringing activity is not based solely on Werner's *use* of the Accused Products, but rather Werner's *use in combination* with other products unrelated to Plaintiff. (Reply, at 3–4). However, as also previously noted, each of Defendant's claim charts in the *Werner* case belies Defendant's argument, as each chart clearly accuses Werner of infringement by "using" Plaintiffs products. (Ex. 18, ECF No. 18-18, at 1); (Ex. 23, ECF No. 18-23, at 1); (Ex. 24, ECF No. 18-24, at 1); (Ex. 25, ECF No. 18-25, at 1); (Ex. 26, ECF No. 18-26, at 2); (Ex. 27, ECF No. 18-27, at 1). Instructions extracted from Plaintiff's website also are referenced in each element in the claim charts relating to the '810 and '391 patents. (Exs. 18, 26, ECF Nos. 18-18, 18-26). However, with respect to the '388, '040, and '153 patents, only the claims' preambles cite to Plaintiff's documents on how to use the Accused Products in an allegedly infringing manner. (Exs. 23–25, ECF Nos. 18-23, 18-24, 18-25). And the claim chart for the '845 Patent does not cite to Plaintiff's documents. (Ex. 27, ECF No. 18-27, at 46–52).

      Therefore, declaratory judgment jurisdiction exists regarding the '810 and '391 patents, but not the '040, '153, '845, and '388 patents. The only Accused Products at issue in the *Werner* case are the CVD and ELD Tablets. *See* FAC ¶ 18, *Werner* case (N.D. Tex. Feb 28, 2025), Dkt. No. 23. Accordingly, declaratory judgment jurisdiction over the '810 and '391 patents is confined to those two products under this theory of liability. *See DataTern*, 755 F.3d at 911.

      C.R. England has also been accused of directly infringing some of the patents-in-suit through use of Plaintiff's products, but Plaintiff has not presented any claim charts in the FAC relating to the *C.R. England* case. Thus, any potential indirect infringement liability against Plaintiff originating from the *C.R. England* case has not been sufficiently pleaded. PACCAR and MVT have also been accused of directly infringing some of the

patents-in-suit through use of Plaintiff's products, but these lawsuits commenced after this declaratory judgment action. (Opp'n, at 5–6). Because Plaintiff must establish subject matter jurisdiction at the time of filing, the Court declines to consider these later-filed customer lawsuits. *DataTern*, 755 F.3d at 906 ("A declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing.") (citation omitted).

With respect to the '565 and '044 patents, Defendant has attempted to enforce those patents only against one of Plaintiff's customers, C.R. England, and Plaintiff acknowledges that attempt failed. (FAC ¶ 4); (Opp'n, at 6). As discussed, Plaintiff also has presented no claim charts relating to those patents, let alone one that could serve as a basis for Plaintiff's indirect infringement liability. That leaves the final circumstance identified by Plaintiff: the NDA and failed licensing negotiations. While the NDA and licensing negotiations appear to have included the '565 and '044 patents,[6] the collapse of those negotiations and failure to license the '565 and '044 patents do not create declaratory judgment jurisdiction over those patents under the circumstances. The Court declines to find on the present record a substantial controversy of sufficient immediacy and reality to warrant declaratory judgment jurisdiction over the '565 and '044 patents.

Based on all the circumstances identified by Plaintiff, including its indemnity obligations, declaratory judgment jurisdiction exists for all patents-in-suit except the '565 and '044 patents. The Court turns to the remaining issues: personal jurisdiction and venue.

**B. Personal Jurisdiction**

Specific personal jurisdiction may exist when a patentee purposefully directs its enforcement activities into the forum. *See Autogenomics,* 566 F.3d at 1020 (stating where "patentee 'may be said to purposefully avail itself of the forum and to engage in activity

---

[6] Plaintiff alleges the NDA and licensing negotiations included Defendant's "portfolio" of patents, the patents-in-suit, Plaintiff's customers, and the "various" Customer Litigations. (FAC ¶¶ 31-36.)

16

25-cv-457-DMS-SBC

that relates to the validity and enforceability of the patent[,]'" enforcement action may warrant exercise of specific personal jurisdiction) (citation omitted); *Kyocera Commc'ns, Inc. v. Potter Voice Techs., LLC*, No. 13-CV-0766-H (BGS), 2013 WL 2456032, at *3 (S.D. Cal. June 5, 2013) (finding personal jurisdiction in California where patentee sued California resident defendants in other states and sued another defendant in California). Defendant has developed a significant footprint in California through its enforcement activities—itself referring to a "campaign to enforce the Asserted Patents" in California and Texas. (Mot., at 2.)

Defendant has filed at least thirteen other patent enforcement actions in California, involving many of the same or related patents to the patents-in-suit. (Opp'n, at 18, Ex. H). Two of those cases, litigated in the Central District of California, are part of Defendant's enforcement campaign, include many of the patents-in-suit, and have been extensively discussed above: *C.R. England* and *Schneider*.[7]

Plaintiff also points out that Defendant retained counsel in California to prosecute its infringement claims in *C.R. England* and *Schneider*, (Opp'n, at 18), served process in California on C.R. England and Schneider, both of which are California "residents," and communicated with Plaintiff's counsel regarding settlement negotiations through an NDA while its customers—C.R. England and Schneider—were actively defending claims of infringement of many of the patents-in-suit. (*Id.* at 19–20).[8] Clearly, these activities are related to enforcement of the patents-in-suit and purposefully directed at residents of the forum state.

Plaintiff also has made clear, and Defendant does not dispute, that the present action commenced precisely because Defendant accused Plaintiff's customers—through the *C.R.*

---

[7] Defendant accused C.R. England of infringing the '837, '968, '810, '565, '044, '388, '040, '153, '391, and '845 patents, (*see C.R. England* case (C.D. Cal. Sep. 30, 2024), Dkt. No. 73; Compl. ¶ 1, *C.R. England* case (C.D. Cal. Feb. 15, 2024), Dkt. No. 1), and Schneider of infringing the remaining four patents-in-suit. (*See* FAC ¶ 1, *Schneider* case (C.D. Cal. Feb. 24, 2025), Dkt. No. 26.)

[8] Defendant does not dispute Plaintiff's allegations that C.R. England and Schneider are "residents of the forum."

*England* and *Schneider* cases—of infringing many of the patents-in-suit through the customers' use of Plaintiff's products and services. (FAC ¶¶ 2–9). Defendant argues that because there are no claims in the *C.R. England* case that accuse C.R. England of infringement based on its use of Plaintiff's products, the claims in this declaratory judgment action do not relate to Defendant's enforcement actions in the *C.R. England* case. (Def.'s Mot., at 19–20). However, Plaintiff is not seeking declaratory judgment based on the *C.R. England* complaint, but rather on Defendant's attempt to add claims of infringement of the relevant patents based on C.R. England's use of Plaintiff's products and services. (FAC ¶¶ 4–6).

      Because Plaintiff's claims of noninfringement arise out of Defendant's enforcement activities of the patents-in-suit directed at California residents, and include cases filed in California, Plaintiff has made a sufficient showing that this Court may exercise personal jurisdiction over Defendant. Defendant has not presented any compelling argument that exercising jurisdiction over it would be unreasonable or unfair. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED**.

### C. Venue

      The parties disagree over whether 28 U.S.C § 1391 or 28 U.S.C § 1400(b) governs venue in this case. Defendant argues the Supreme Court's decision in *TC Heartland* controls, which held that venue for a corporate defendant in an action for "patent infringement" is limited under § 1400(b) to its state of incorporation (here Texas for Defendant). 581 U.S. at 267. However, the Court is persuaded by the chorus of district courts that have declined to apply § 1400(b) to declaratory judgment actions for patent *noninfringement* and instead have applied the general venue statute for civil actions under § 1391. *See, e.g.*, *ResMed Corp. v. Cleveland Med. Devices, Inc.*, No. 23-CV-500 TWR (JLB), 2023 U.S. Dist. LEXIS 147755, at *12 n.3 (S.D. Cal. Aug. 22, 2023) ("Venue in a declaratory judgment action for patent noninfringement [] is governed by the general venue statute." (citation omitted); *Knape v. Design Ideas, Ltd.*, No. 20-cv-1216, 2022 U.S. Dist. LEXIS 238726, at *7 (W.D. Mich. Feb. 2, 2022) ("By its plain text, 28 U.S.C. § 1400(b)

applies only to civil actions for 'patent infringement.' [Plaintiff's] declaratory judgment action is not for 'patent infringement' and is governed by the general venue statute, § 1391(b), not the patent venue statute, § 1400(b)."); *Wenzhou Xin Xin Sanitary Ware Co., Ltd. v. Delta Faucet Co.*, No. 23-2038-ES-AME, 2023 U.S. Dist. LEXIS 168083, at *7 (D.N.J. Sep. 21, 2023) ("28 U.S.C. § 1391(b) . . . generally govern[s] venue in civil actions, including this action for a declaratory judgment of patent non-infringement."); *Genesis Attachments, LLC v. Detroit Edge Tool Co.*, No. 16-cv-402-wmc, 2019 U.S. Dist. LEXIS 72411, at *9 (W.D. Wisc. Apr. 30, 2019) ("*TC Heartland* did not change the venue requirements for *declaratory judgment* actions involving patents."); *Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372, at *15 n.8 (D. Del. Sep. 11, 2017) (same). Thus, this Court concludes consistent with other districts courts to have considered the issue that the Federal Circuit's holding in *VE Holding*, 917 F.2d at 1583 ("a declaratory judgment action alleging that a patent is . . . not infringed—the mirror image of a suit for patent infringement—is governed by the general venue statutes, not by § 1400(b)[]"), was undisturbed by *TC Heartland*.

Under § 1391(b)(1), venue is proper in any district where the defendant "resides"—which, according to § 1391(c)(2), is "any judicial district" where the defendant entity "is subject to the court's personal jurisdiction with respect to the civil action in question." *See* 28 U.S.C. §§ 1391(b), (c)(2). Defendant is clearly subject to personal jurisdiction in California. Defendant has also extended its footprint into this District. As Plaintiff points out, Defendant sued companies with operations in this District, including two lawsuits against Carlsbad-based CalAmp, an upstream supplier of components to Plaintiff; negotiated an NDA and pursued licensing terms over the patents-in-suit with Plaintiff in this District; and conducted part of its self-described "campaign of enforcement" against Plaintiff's customers for use of Plaintiff's products "designed, provisioned, sold and supported in this District." (Opp'n, at 23.)

Accordingly, Defendant "resides" in this District for purposes of venue. Further, it would be neither "efficient" nor "effective" to require Plaintiff to "participate in the

[*Werner*] Texas action" in the Northern District of Texas and the California *Schneider* action in the Central District of California to address the patents-in-suit. *See DataTern*, 755 F.3d at 904. That would require Plaintiff's intervention in different cases—in different venues and states—to defend itself and its customers against a litigation campaign that Defendant initiated. Plaintiff also would have to seek relief from the stay order in *Schneider* and invite that court to hear claims it has already passed off to this Court. Under the circumstances, litigating the patents-in-suit in one forum—the Southern District of California—is effective, efficient, and fair. Accordingly, Defendant's motion to dismiss for improper venue is **DENIED**.[9]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for lack of subject matter jurisdiction is **GRANTED** as to Plaintiff's claims of noninfringement of the '565 and '044 patents, and **DENIED** as to all other patents-in-suit. Defendant's motions to dismiss for lack of personal jurisdiction and improper venue are **DENIED**.[10] Plaintiff may file a Second Amended Complaint within 14 days of the filing of this Order.

**SO ORDERED.**

Dated: August 11, 2025

_____
Hon. Dana M. Sabraw
United States District Judge

---

[9] Plaintiff also argues that venue is proper in this District under § 1392(b)(2) because "a substantial part of the events . . . giving rise to [Plaintiff's] claim[s] occurred" in this District. The Court declines to address this argument because it finds venue is proper under § 1392(b)(1).

[10] Defendant's motion to stay discovery pending resolution of Defendant's motion to dismiss is denied as moot.